**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

LESTER MCKINLEY,               )
          Plaintiff,           )
                           )
          v.                  )       CAUSE NO.: 2:13-CV-485-PRC
                           )
CAROLYN W. COLVIN,         )
Acting Commissioner of the      )
Social Security Administration,    )
          Defendant.         )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lester McKinley on December 24, 2013, and a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed by Plaintiff on May 23, 2014. Plaintiff requests that the June 20, 2012 decision of the Administrative Law Judge denying his claim for disability insurance benefits be reversed and remanded for further proceedings. On August 25, 2014, the Commissioner filed a response, and Plaintiff filed a reply on September 12, 2014. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff suffers from degenerative disc disease of the lumbar spine and of the cervical spine. On March 5, 2010, Plaintiff filed an application for disability insurance benefits, alleging an onset date of January 1, 2009. The application was denied initially on June 17, 2010, and upon reconsideration on August 3, 2010. Plaintiff timely requested a hearing, which was held on June 1, 2012, before Administrative Law Judge ("ALJ") Mario G. Silva. In appearance were Plaintiff, his attorney, and a vocational expert. The ALJ issued a written decision denying benefits on June 20, 2012, making the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.      The claimant has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date.

3.      The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and obesity.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c). The claimant can lift/carry and push/pull occasionally 50 pounds and frequently 25 pounds; sit for a total of about six hours in an eight-hour workday and stand/walk for a total of about six hours in an eight-hour workday. The claimant can occasionally climb ladders, ropes or scaffolds and crawl, but frequently climb ramps and stairs, balance, stoop, kneel and crouch. The claimant must avoid concentrated exposure to extreme cold, wetness and hazards, such as unprotected heights or dangerous moving machinery.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born [in 1952] and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security
        Act, from January 1, 2009, through the date of this decision.

(AR 13-19).

On October 25, 2013, the Appeals Council denied Plaintiff's request for review, leaving the

ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On December 24,

2013, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of

the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42

U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and

indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse

only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous

legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence

consists of "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*,

345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the

evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [the ALJ's] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is

not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Seeking reversal of the ALJ's decision and remand for further proceedings, Plaintiff argues that (1) the ALJ failed to properly analyze the 12-month duration requirement in relation to Plaintiff's cervical pain, (2) the ALJ's decision relies in part on two contradictory drafts of the same consultative examination, and (3) the credibility determination and RFC assessment were not based on substantial evidence. The Court considers each of Plaintiff's arguments in turn.

### A. Plaintiff's Cervical Pain and the Twelve-Month Duration Requirement

In his brief, Plaintiff argues that the ALJ failed to properly analyze the twelve-month duration requirement of 20 C.F.R. § 404.1520(a)(4)(ii) with respect to his cervical pain. The Court finds that, as two separate issues, the ALJ did not properly evaluate Plaintiff's cervical pain and did not make a proper finding regarding the twelve-month duration requirement.

At the June 1, 2012 hearing, Plaintiff's attorney identified two severe impairments alleged by Plaintiff: (1) chronic low back pain radiating into both legs with a herniated disc, degenerative

disc disease of the lumbar spine, and myelopathy and (2) cervical spondylosis and neck problems with numbness and tingling in both arms.

Plaintiff originally filed his application for benefits on March 5, 2010, alleging an onset date of January 1, 2009, as a result of lower back pain following an automobile accident on December 26, 2008, that left him no longer able to perform the job he had performed for forty years at the heavy exertional level. (For purposes of the analysis of this argument, the Court does not review the records of Plaintiff's lumbar pain.)

In August 2010, Plaintiff was seen for stiffness in his neck for the prior four months; Plaintiff also reported that in addition to the neck pain on both sides, he had numbness and tingling in his fingers and hands, which he had suffered from for a year. A cervical spine MRI in October 2010 showed mild right foraminal narrowing at C5-C6 and fatty degenerative changes; Plaintiff was assessed with mild degenerative changes.

On January 18, 2011, Plaintiff reported to his treating physician that he had "a lot of pain when he walks" and that the pain was in his neck and lower back. Plaintiff was seen on that date to have disability paperwork filled out.

On June 1, 2011, Plaintiff was seen by his treating physician to have paperwork filled out for his health insurance. His current problem was listed as "herniated disc with myelopathy." He reported the intensity of his pain as severe with several episodes daily that last for two to four hours. Aggravating factors included exertion. On examination, his neck was supple with a full range of motion. His musculoskeletal examination revealed no clubbing, cyanosis, or evidence of ischemia or infection; normal gait; normal tone and strength with 5/5 on the left and right, 5/5 bilaterally for triceps, 5/5 bilaterally for hip flexors, 5/5 bilaterally for hip adductors, and 5/5 bilaterally for hip

abductors; and his sensation was normal. He was told to schedule a follow up visit in four months. However, there is no record of any subsequent visit to his treating physician until April 20, 2012, for follow up after Plaintiff was involved in a second automobile accident.

On April 9, 2012, Plaintiff was seen in the emergency room following a second automobile accident. Plaintiff reported moderate to severe neck pain and left back pain. He reported that immediately after the accident, walking increased his neck pain. On examination, he exhibited musculoskeletal tenderness but had normal range of motion. He was diagnosed with neck and back strain. A CT scan of his cervical spine showed no acute post traumatic changes but revealed changes of mild degenerative disc disease at C3-4, C4-5, and C5-6. The radiology results listed "disc space narrowing is seen with osteophytes in adjoining endplates," "vacuum phenomenon at C3-4 and C4-5 intervertebral discs is seen," and "mild posterior osteophytes at C5-6 level are noted." (AR 288). Plaintiff's self-reported pain assessment was 8 out of 10 (on a scale of 1 to 10, with 10 being the worst) in his back and neck.

On April 20, 2012, Plaintiff was seen by his treating physician, and he reported that his pain had worsened since the accident. He reported being able to walk but that the pain was moderate. He also reported that he normally did not take pain medication but that he had started to since the accident. His pain was of severe intensity several times a day, lasting from two to four hours with exertion an aggravating factor. However, on examination, Plaintiff's neck was supple with the full range of motion and his musculoskeletal exam was normal in all respects. Dr. Ross noted that pain was elicited over the "cervical bilateral cervical paraspinous muscle." Plaintiff's muscular strength was normal and he had a full active range of motion. Dr. Ross's assessment was whiplash injury,

and Dr. Ross initiated a referral to physical therapy. At the time of the hearing in this case on June 1, 2012, Plaintiff had not attended physical therapy, which the ALJ noted.

In the chronological review of Plaintiff's medical history within the RFC determination, the ALJ acknowledged that Plaintiff had recently suffered a second automobile accident and wrote that the date of the accident was "less than 12 months from the date of this adjudication." (AR 17). The ALJ reviewed Plaintiff's testimony that the accident increased his pain, and the ALJ accurately recounted the emergency room records. However, nowhere did the ALJ discuss the medical records of August 2010, January 2011, and June 2011 regarding Plaintiff's preexisting neck pain.

In his brief, Plaintiff argues that the ALJ failed to properly analyze the twelve-month duration requirement in relation to pain in his cervical spine. Determining whether an impairment is severe and whether an impairment meets the twelve-month duration requirement are two separate questions in the sequential evaluation process. A "severe" impairment is one defined as one that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. In addition, an impairment must have lasted or be expected to last for a period of at least twelve months. 20 C.F.R. § 404.1509. If a claimant does not have a severe impairment that meets the duration requirement, the claimant is found to be not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff argues that the ALJ conflated these two questions and improperly found that since Plaintiff's worsened back pain and cervical impairment had not lasted for twelve months at the time of the decision, they failed to meet the duration requirement. The Court finds that the ALJ made two errors.

First, the ALJ failed to discuss Plaintiff's neck pain that existed prior to the April 2012 automobile accident, which was documented as early as August 2010 and which Plaintiff's attorney

identified at the hearing as one of the bases for Plaintiff's application for disability benefits. The ALJ did not discuss the October 2010 MRI of the cervical spine that showed the mild degenerative changes. The ALJ discussed only Plaintiff's lumbar pain in determining whether Plaintiff suffered from a severe impairment at step two. The ALJ did not determine whether Plaintiff's neck pain was severe, notwithstanding medical evidence of its existence, nor did the ALJ incorporate any limitations based on neck pain. Thus, it appears either that the ALJ ignored or was unaware of the neck pain first reported in August 2010 or that the ALJ found that the neck pain was not severe but failed to make that finding on the record.

It is not clear, however, how the ALJ will assess the preexisting cervical pain. At the consultative examination on May 24, 2010, Plaintiff did not complain of neck pain; that examination was just three months before he complained in August 2010 of neck pain that began a year earlier and was worse for the previous four months. In addition, the January and June 2011 visits to the treating physician were not for routine care but rather for the completion of paperwork. Yet, the Court cannot know how the ALJ weighed the evidence of neck pain because the ALJ did not discuss any of the evidence predating the April 2012 accident. Without that discussion, the Court also cannot know whether the ALJ's understanding of Plaintiff's post-April 2012 accident neck pain took into consideration his preexisting condition. And, even if the cervical disc disease is not considered a severe impairment, the ALJ must consider any limitations resulting from the impairment and consider all of Plaintiff's impairments in combination in assessing his RFC. Remand is required for a proper determination of whether Plaintiff's cervical pain was severe and, if so, what limitations, if any, resulted from the cervical pain.

Second, the ALJ failed to properly determine whether Plaintiff's increased pain as a result of the second car accident met the twelve-month duration requirement. At the hearing, less than two months after the accident, Plaintiff testified that the second car accident "took the pain up to another level." (AR 38). An impairment meets the duration requirement if it is expected to *last* for a period of twelve months; there is no requirement that the impairment have already lasted for twelve months at the time of the decision. *See* 20 C.F.R. § 404.1509; SSR 82-52, 1982 WL 31376, at *3 (1982). Social Security Ruling 82-52 provides that in cases denied on the basis of insufficient duration, the ALJ "must state clearly in the denial rationale that" within 12 months of onset, there was or is expected to be sufficient restoration of function so that either "there is or will be no significant limitation of the ability to perform basic work-related function" or "that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in [significant gainful activity], considering pertinent vocational factors." SSR 82-52, 1982 WL 31376, at *3; *see also Schiavone v. Astrue*, No. 3:10-CV-149, 2011 WL 4602151, at *12 (N.D. Ind. Sept. 29, 2011) ("If the ALJ denies a claim because of insufficient duration, the ALJ must state clearly that there is expected to be sufficient restoration of function within 12 months of onset."). The ALJ did neither. As a result, because the ALJ did not make a finding as to the duration of the increased pain following the accident, it is not clear whether the ALJ ignored the impact of the second automobile accident on the basis that it occurred less than twelve months prior to the hearing. On remand, the ALJ will have the opportunity to obtain updated medical records regarding Plaintiff's cervical pain and to determine the duration of the impairment.

## B. Multiple Drafts of the Consultative Examination

The record contains two versions of consultative examiner Dr. Teofilo Bautista's report of the May 24, 2010 examination of Plaintiff. Plaintiff argues that inconsistencies between the two reports regarding his lumbar range of motion raise questions about which version of the report is accurate, whether Dr. Bautista performed range of motion testing of Plaintiff's back at all, which version of the report the ALJ considered, whether the ALJ considered both drafts, and how the ALJ concluded that Dr. Bautista's physical examination of Plaintiff was "essentially normal."

The first version of the report of the May 24, 2010 examination, found at pages 266-68 in the record, is unsigned, was dictated on May 24, 2010, was transcribed on May 26, 2010, and was faxed on May 26, 2010. The second version of the report of the May 24, 2010 examination, found at pages 270-72 in the record, is signed, was dictated on June 10, 2010, was transcribed on June 14, 2010, and was faxed on June 14, 2010. In his decision, the ALJ cited only the second report (Ex. 7F at AR 270-72).

Dr. Bautista's notes on physical examination of Plaintiff's back in each report are inconsistent. The first report provides: "Complains of left lumbar pain. Forward flexion 60°, extension 0°, right lateral flexion 25° and left lateral flexion 20°. Normal curvature of the thoracolumbar spine." (AR 267). In contrast, the second report provides: "Refused and unable to do range of motion of the back due to pain, tenderness, and muscle spasm at the lumbrosacral area. Normal curvature of the thoracolumbar spine." (AR 271). Only the second report contains a range of motion chart, which is dated June 15, 2015, and is signed by Dr. Bautista. It shows that Plaintiff refused/was unable to do range of motion in the lumbar spine and hips.

The reports of the musculoskeletal exam were the same; Plaintiff had a normal gait, had no limping or antalgic gait, used no walking assistive devices, and was able to do tandem, heel, and toe walking without difficulty. Similarly, the reports of the neurological exams were the same, with the exam normal and a notation that Plaintiff had good sensation in both upper and lower extremities. The final impression of the two reports were worded slightly differently but were substantively the same: chronic low back pain due to motor vehicle accident in 2008, degenerative disc disease at L4-L5 and L5-S1 levels, and small focal disc protrusion of the left paracentral to foraminal level (left S1 with small disc protrusion).

The Commissioner argues that both the ALJ and State Agency consultative reviewer Dr. Lavallo must have reviewed the second report because an unsigned consultative examination report is not acceptable under 20 C.F.R. § 404.1519n(e) and because both the ALJ and Dr. Lavallo relied on facts that were in the second report that were not in the first. The ALJ noted that Plaintiff's "pain increases with . . . washing his car," (AR 16), which is consistent with the second report that referred to Plaintiff's activity as "washing his car," (AR 270) as opposed to the first report that referred to Plaintiff "waxing his car" (AR 266). Dr. Lavallo cited the portion of Dr. Bautista's second report regarding the inability to do range of motion, writing "ROM=unable to complete in hip or lumbar area due to pain and limited in knee flexion." (AR 275). However, the question is not whether the ALJ should have considered the unsigned version as "not acceptable" under the regulations but rather whether the ALJ did in fact consider the first, unsigned report as a document that was included in the administrative record and whether the ALJ should have considered the first report if it was accurate.

The fact remains that Dr. Bautista submitted two different versions of his report that contain conflicting findings. On the one hand, the inconsistencies are both favorable to Plaintiff in that the first report shows less than a full range of motion and the second shows that he was unable to perform range of motion due to pain, neither of which could be characterized as "essentially normal." On the other hand, the discrepancies between the two reports raise questions about the nature of the examination and the overall accuracy of Dr. Bautista's report.

More troubling than the two versions of the report, however, is the ALJ's failure to discuss Dr. Bautista's finding that Plaintiff "refused" and "was unable" to perform range of motion of the lower back and hips. In discussing the second report (Ex. 7F at AR 270-72), the ALJ correctly noted that Plaintiff denied any numbness/tingling sensation in his lower extremities, that Plaintiff's pain increased with bending and washing his car, and that Plaintiff was not on any pain pills or anti-inflammatory medications. The ALJ then inaccurately comments, "Similar to his previous medical consultative examination [in December 2009],[1] his physical examination was essentially normal." (AR 17). Nowhere does the ALJ discuss Plaintiff's inability to perform range of motion. This error requires remand.

The Court is not persuaded by the Commissioner's argument that Plaintiff's inability to perform range of motion exercises was not an examination finding of Dr. Bautista's but rather a report that Plaintiff refused to participate in the testing. Dr. Bautista reported that Plaintiff "refused and [was] *unable* to do range of motion of the back due to pain." (AR 271) (emphasis added). This clinical finding is no different than if Dr. Bautista had made a clinical finding that Plaintiff had limited flexion due to pain and assigned a range of motion in degrees, such as flexion of 50 degrees.

---

[1] Dr. Smejkal performed a consultative examination of Plaintiff on December 4, 2009.

*See Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (noting that the consultative examiner made clinical findings that the claimant "could bend her lower back at only 50 degrees with 'mild pain,' and 'was unable to squat'"). In other words, this was not Plaintiff "simply refusing to perform diagnostic testing due to subjective complaints of pain or other symptoms." (Def. Resp. 4). Rather, Dr. Bautista made a finding that Plaintiff could not perform the movements. Although the Commissioner is correct that the remainder of the examination was "essentially normal," those examination findings do not address Plaintiff's ability to perform movement in his lower back. And, the ALJ himself did not reason that the sum of the essentially normal findings somehow negated Plaintiff's inability to perform range of motion in his back and hips; the ALJ ignored Plaintiff's inability to perform those maneuvers. It was not reasonable for the ALJ to conclude that Dr. Bautista's physical examination findings were "essentially normal."

Because the primary source of Plaintiff's impairment is the limitations flowing from his lumbar pain, the ALJ's failure to discuss the consultative examiner's finding that Plaintiff could not perform range of motion is reversible error. The ALJ cannot build a logical bridge between the evidence and the RFC for a limited range of medium work. The Court notes that Plaintiff was 59 years old at the time of the decision; if Plaintiff had been found unable to perform his past work and was otherwise limited to light work, he would have been found disabled under the Medical–Vocational Guidelines. See 20 C.F.R. Part 404, Subpart P, App. 2, Rule 202.04.

### C. Credibility Determination

Plaintiff seeks remand for a credibility determination that complies with Social Security Ruling 96-7p. The Commissioner responds that the ALJ provided sufficient explanation for his credibility finding. In making a disability determination, the ALJ must consider a claimant's

statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability

to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot

support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the

relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms;
(7)     Other factors concerning functional limitations due to pain or other
         symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3). "Because the ALJ is 'in the best position to determine a witness's

truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination

unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting

*Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must

adequately explain his credibility finding by discussing specific reasons supported by the record."

*Pepper*, 712 F.3d at 367 (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul.

2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be sufficiently specific to make clear to the

individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

statements and the reasons for that weight.").

Plaintiff begins by arguing that remand is required because the ALJ used the oft-discussed

boilerplate language to decide Plaintiff's credibility. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645

(7th Cir. 2012). An ALJ's use of the boilerplate language does not amount to reversible error if he

"otherwise points to information that justifies his credibility determination." *Pepper*, 712 F.3d at

367-68; *see also Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Recently, the Seventh Circuit Court of Appeals has rekindled its criticism that the boilerplate language's "implication . . . is that residual functional capacity (ability to engage in gainful employment) is determined *before* all the evidence relating to the claimed disability is assessed, whereas in truth all that evidence is material to determining the claimant's residual functional capacity." *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014).

In this case, before invoking the boilerplate language, the ALJ summarized Plaintiff's allegations of disability. The ALJ noted that Plaintiff alleged disability due to spinal injuries resulting from a car accident, Plaintiff testified he has trouble bending forward and kneeling but that he can squat, he could lift up to 12 pounds, he cannot use his arms and hands without pain, he cannot sit for more than 15 minutes, his pain worsens on "cooler" days, his pain radiates from his back down through his calf, and he has numbness on his right side when he sleeps. The ALJ then recited the "boilerplate" language: "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (AR 15).

In this case, remand is not warranted solely based on use of the boilerplate language because the ALJ went on to discuss the medical evidence chronologically followed by Plaintiff's statements of pain, his activities of daily living, his work history, and the opinion evidence. Nevertheless, because the Court is remanding for other reasons, several concerns raised by Plaintiff regarding the credibility determination should be revisited by the ALJ on remand.

The ALJ discredits Plaintiff based on two "blatant inconsistent statements" made during the first consultative examination by Dr. Smejkal on December 4, 2009. (AR 16). An ALJ may discount

a claimant's testimony when it conflicts with other statements made by the claimant. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Yet, in this case, the ALJ does not explain how the statements are inconsistent nor do the statements appear on their face to be inconsistent.

First, the ALJ noted that Plaintiff told Dr. Smejkal "that his physical therapy helped his pain very little, yet he noted to his doctors that he saw improvement and increased mobility with the physical therapy." *Id.* It is not inconsistent to have improved and increased mobility while still being in pain. In his reply brief, Plaintiff notes that he consistently reported pain of 5 or above out of 10 on a 10-point scale, with his pain levels reported at an 8 out of 10 to a 10 out of 10 when he began physical therapy and then dropping to a 5 to 7 out of 10 by the time he had completed physical therapy. The Commissioner notes that the physical therapy discharge summary on April 2, 2009, provides that Plaintiff's "current severity" was 3 out of 10; however, the same line provides that his "severity at best" was 5 out of 10 and his "severity at worst was 7 out of 10." The therapy notations showed an increase in mobility. On May 10, 2009, Plaintiff reported to Dr. Ross that he had seen some improvement in his pain, that he had increased mobility, but that his pain was still present constantly although it was bearable. The ALJ did not discuss any of these records or explain how Plaintiff's statements were inconsistent. On remand, the ALJ is directed to discuss why his these statements regarding pain and mobility are inconsistent with citation to and analysis of the record evidence.

Second, the ALJ discredits Plaintiff for reporting at the consultative evaluation with Dr. Smejkal that he could lift at least 20 pounds but then testifying that he could only lift 12 pounds. The ALJ does not acknowledge that the consultative evaluation took place in December 2009 and that

the hearing was in June 2012. Social Security Ruling 96-7p cautions that "the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible." SSR 96-7p, at *5. The Ruling explains that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms." *Id*. As a result, "the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects." *Id*. The ALJ did not discuss the time frame or the fact that Plaintiff had suffered a second automobile accident less than two months earlier and that Plaintiff testified that the second accident worsened his pain. *See Roddy*, 705 F.3d at 639; *see also Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014). Moreover, it is unclear how an ability to lift at least 20 pounds for someone with lumbar pain and related postural limitations translates into the ability to frequently lift 25 pounds; occasionally lift 50 pounds; frequently climb ramps and stairs; balance, stoop, kneel, and crouch; and occasionally crawl and climb ladders, ropes, or scaffolds as required for the limited range of medium work assigned by the ALJ. Without further explanation, the ALJ erred by finding these statements inconsistent and discrediting Plaintiff as a result.

Next, the ALJ discounted Plaintiff's credibility because he "engages in a fair amount of activities of daily living." (AR 17). The ALJ noted that Plaintiff cuts the grass, does housecleaning once a week, is able to vacuum, and is independent in his activities of daily living. As the Seventh Circuit Court of Appeals has often cautioned, minimal daily activities do not establish that a claimant is capable of engaging in substantial work activity. *Clifford*, 227 F.3d at 872; *see also*

*Roddy*, 705 F.3d at 637; *Bjornsen*, 671 F.3d at 647; *Craft*, 539 F.3d at 680; *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). And, the ALJ does not offer any analysis of how Plaintiff's restricted daily activities were inconsistent with Plaintiff's stated limitations or that the activities are consistent with the requirements of medium work. Contrary to the Commissioner's argument, the ALJ does appear to equate the ability to engage in limited daily activities with performing medium exertional work: "The undersigned finds the claimant engages in a fair amount of activities of daily living, which does not warrant a more restrictive residual functional capacity." (AR 17). Nor does the ALJ assess how Plaintiff's second automobile accident impacted his ability to perform activities of daily living. While this is only one of many factors considered by the ALJ, the lack of explanation renders it unsupported. On remand, the ALJ is directed to explain how the daily activities are inconsistent with his stated limitations.

Third, Plaintiff told Dr. Bautista during the consultative examination in May 2010 that his pain increases with bending and washing his car. From that, the ALJ reasoned that "[t]he mere fact the claimant is able to wash his car suggests his pain is not as severe as alleged and it is inconsistent with his testimony that he does not do much during the day." (AR 16-17). If anything, this statement by Plaintiff demonstrates a limitation on his daily activities that would likely translate to a limitation on the physical demands of work, namely that his pain *increased* with bending and washing his car and that his pain would increase with the postural limitations of medium work. It is not clear how his testimony regarding increased pain is inconsistent with his testimony that he did not do much during the day.

Fourth, Plaintiff testified that he could sit in a car for only thirty minutes, yet on one occasion (in fact, on the day of his second automobile accident), Plaintiff drove an hour to Lafayette, Indiana,

to pick up his grandson from school. The ALJ then contrasted Plaintiff's statement that he does very little driving with his report to Dr. Bautista that he does not have any problem driving. However, the ALJ fails to recite Plaintiff's testimony that on that drive to Lafayette, he had back pain and "just tolerated it." (AR 40). In fact, he testified that he told his family that he would probably have back pain going to get his grandson, but that he did it anyway because the family wanted to see the grandson. Again, the ALJ fails to explain how the fact that Plaintiff drove for an hour on one occasion with back pain is inconsistent with his allegations that he can only sit for 30 minutes.

Finally, Plaintiff criticizes the ALJ's consideration of his work history. The ALJ noted that Plaintiff had a strong work history but found that it was insufficient to overcome the lack of medical evidence, which suggested that Plaintiff is capable of more than he alleges. The ALJ also noted that Plaintiff was collecting a retirement pension, which "likely explains why he is not out actively seeking employment." (AR 17). Plaintiff criticizes the ALJ for failing to mention that the history was 35-years long and that Plaintiff was making $80,000 when he stopped working. However, the record shows that Plaintiff's employer terminated his employment because he was unable to return to his prior work which was at the heavy to very heavy exertional level; thus, Plaintiff could not have returned to that job. In addition, Plaintiff testified that he was receiving $3,000 a month in retirement benefits. The ALJ's conclusion is not unreasonable and is supported by the record.

As a final matter, in support of the soundness of the ALJ's credibility determination, the Commissioner's response brief points to the ALJ's discussion of the diagnostic testing and clinical findings in the record as well as the ALJ's discussion of the treatment records following the first automobile accident. Contrary to Plaintiff's position, the ALJ's discussion of this medical evidence was in the context of assessing both Plaintiff's credibility and his residual functional capacity and

was meant to shed light on Plaintiff's credibility. However, Plaintiff is correct that the ALJ never articulated reasoning that the conservative treatment or examination findings detracted from Plaintiff's credibility. More importantly, like the ALJ, the Commissioner fails to note Dr. Bautista's findings in either his first report of limited range of motion in the back and hips or in his second report that Plaintiff was unable to perform range of motion in the back and hips, neither of which were "essentially normal." The Commissioner is correct that the ALJ discussed the many factors required in a credibility determination. However, for the reasons set forth above, the ALJ's analysis of some factors was poorly reasoned or unsupported, requiring further discussion on remand.

### D. Residual Functional Capacity

Plaintiff argues that the ALJ erred by giving the opinion of State Agency medical consultant Dr. Lavallo significant weight, arguing that Dr. Lavallo's opinion conflicted with the consultative exam of Dr. Bautista on which he relied. The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1545(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

As discussed above, there are two versions of Dr. Bautista's consultative examination of Plaintiff. In providing a physical residual functional capacity assessment, Dr. Lavallo appears to have relied on the second report, although both reports were in the record. In the second report, Dr. Bautista reported that Plaintiff refused and was unable to do range of motion in the lumbar spine due to pain, tenderness, and muscle spasm. In the section requesting a narrative explanation of the evidence supporting his conclusions on Plaintiff's exertional limitations, Dr. Lavallo cited, without discussion, that portion of Dr. Bautista's second report, writing "[Range of Motion]=unable to complete in hip or lumbar area due to pain and limited in knee flexion." (AR 275). Dr. Lavallo went on to opine in the next section of his RFC assessment that Plaintiff is capable of frequent stooping and crouching, citing back to that narrative explanation that included the citation to Dr. Bautista's findings. It is not clear how Plaintiff is able to frequently stoop and crouch if he is unable to perform any range of motion in the lumbar spine. *See Thomas*, 534 F. App'x at 551 (finding that the ALJ failed to assess an inconsistency between an assessment that the claimant had only 50 degrees of flexion in her lower back and a finding that the claimant could stoop occasionally (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (holding that the ALJ erred in finding that the claimant could occasionally stoop without addressing the report that the claimant had only 40 degrees of flexion in the lower back))). Dr. Lavallo did not explain how Dr. Bautista's finding supported his RFC determination.

The ALJ erred by not identifying and resolving this apparent inconsistency. This error is particularly important because the vocational expert testified that if Plaintiff could only bend forward on an occasional basis and had very limited squatting, he would be unable to perform any

jobs. On remand, the ALJ is directed to resolve the inconsistency between Dr. Bautista's consultative examination findings and Dr. Lavallo's RFC opinion.

Plaintiff also criticizes the ALJ's decision to give significant weight to Dr. Lavallo's opinion because Dr. Lavallo assessed Plaintiff's statements about his limits as "only partially credible" without any explanation on the RFC assessment form of why Plaintiff was not credible. Although consultative reviewers are not subject to the same standards in formulating a credibility determination as an ALJ, Dr. Lavallo's RFC opinion was informed by his credibility assessment. The lack of any explanation by Dr. Lavallo for finding Plaintiff only partially credible serves only to increase the confusion regarding his findings and Dr. Bautista's examination findings and should have factored in to the weight the ALJ accorded Dr. Lavallo's opinion.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 28th day of January, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record